**CASE NO. 12-4123**

IN THE

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

-------------------------------------------------------

ROBERT G. WING, as Receiver for VESCOR CAPTIAL CORP, a Nevada corporation, VESCOR CAPITAL, INC, a Nevada corporation, VESCOPR CAPITAL, LLC, a Nevada limited liability company, VESCORP CAPITAL IV -A, LLC, a Nevada limited liability company, and VESCORP CAPITAL IV-M, LLC, a Nevada limited liability company,

*Plaintiff - Appellee,*

-----V.-----

BERNARD C. BUCHANAN, an individual, BERNARDO'S CORPORATION,   a Nevada corporation, BUCHANAN FAMILY TRUST, B&I BUCHANAN FAMILY LIMITED PARTNERSHIP, a Nevada limited partnership, BUCHANAN FAMILY LIMITED PARTNERSHIP, a Nevada limited partnership, BUCK INVESTMENTS, LLC, a Nevada limited liability company, BAKI LLC, a Nevada limited liability company,

*Defendants – Appellants*,

-----------------------------------

ON APPEAL FROM THE UNITED STATES DISTRICT COURT,
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION
HONORABLE DEE BENSON

## <u>REPLY</u> BRIEF OF DEFENDANTS – APPELLANTS

*Attorneys for Defendants - Appellants*
Clifford V. Dunn, Utah Bar #933
Adam C. Dunn, Utah Bar #10926
DUNN LAW FIRM
110 West Tabernacle
P.O. Box 2318
St. George, UT   84770
Telephone Number: (435) 628-5405
Fax:   (435) 628-4145
Email:   cvdunn@dunnfirm.com

**ORAL ARGUMENT WAS PREVIOUSLY REQUESTED**

## **TABLE OF CONTENTS**

TABLE OF CONTENTS…………………………………………………………...ii

TABLE OF AUTHORITIES………………………………………………………iv

SUMMARY OF ARGUMENT………………………………………………… 1

REPLY ARGUMENT……………………………………………………….... 3

I.     Alter Ego is the only theory upon which the District Court can grant joint and several liability and alter ego must be plead; where alter ego was never plead by the Receiver, the District Court erred in awarding joint and several liability...……………………………………….. 3

      a.   Under Utah law, there are currently three legal theories upon which a court may award judgment jointly and severally against multiple defendants and only the legal theory of alter ego could apply to the facts and circumstances of this case……………………… 5

      b.   Joint and several liability arising out of tort claims was abolished in Utah in 1986.………………………………… 7

      c.   The Receiver's arguments that the district court can award joint and several liability in this case without any claim by the receiver for such an award is flawed………………………………………… 10

      d.   The district court erred in awarding joint and several liability because it did not have authority to grant such a judgment, the Receiver had never claimed joint and several liability, and the Receiver failed to prove the elements necessary for such an award…………………………………………… 13

II.    The District Court erred because it did not start the one year reasonable discovery rule under the Statute

of Limitations for fraudulent transfer when the bad
actor in VesCor was removed by the appointment
of the bankruptcy trustee.……………………………………….. 15

III.    All reasonable inferences show that VesCor was
not a ponzi scheme before 2000.…………………………………… 22

CONCLUSION.…………………………………………………………… 23

REQUEST FOR ORAL ARGUMENT……………………………………….. 24

CERTIFICATE OF VIRUS PROTECTION………………………………...24

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
LIMITATION.……………………………………………………………… 25

CERTIFICATE OF SERVICE…………………………………………... 26

# <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

*Arena Land & Inv. Co. v. Petty*, 906 F. Supp. 1470 (D. Utah 1994).........................6

*BC Tech., Inc. v. Ensil Int'l Corp.*, 2007 U.S. Dist. LEXIS
74126 (D. Utah Oct. 3, 2007) .................................................................14

*In re Blatstein*, 260 B.R. 698 (E.D.Pa. March 19, 2001)...................11, 12

*Broadbent v. Advantage Software, Inc.*, 415 Fed.Appx. 73
(10th Cir. 2011) .....................................................................................17, 18

*Coroles v. Sabey*, 2003 UT App 339 (Utah Ct. App. 2003) ......................6

*Farmers Ins. Exch. v. Parker*, 936 P.2d 1088 (Utah Ct. App. 1997) ...................8, 9

*Federal Deposit Ins. Corp. v. Bismarck Inv. Corp.*,
547 P.2d 212 (Utah 1976) ..........................................................................5

*Gray v. Phillips Petroleum Co.,* 858 F.2d 610 (10th Cir.1988) .............................22

*Harper v. Tri-State Motors, Inc.*, 90 Utah 212, 58 P.2d 18 (1936) ........................11

*McDonald v. Beko Assocs., Inc.*, 2008 U.S. Dist. LEXIS 56891
(D. Utah July 28, 2008).............................................................................13

*Nat'l Serv. Indus. v. B.W. Norton Mfg. Co.*, 937 P.2d 551
(Utah Ct. App. 1997).............................................................................7, 8

*Ponderosa Dev. Corp. v. Bjordahl*, 787 F.2d 533
(10th Cir. Wyo. 1986) .............................................................................14

*Prows v. State*, 822 P.2d 764 (Utah 1991)..............................................14

*Sanns v. Butterfield Ford*, 2004 UT App 203
(Utah Ct. App. 2004)............................................................................8, 13

*SEC v. Infinity Group*, 27 F.Supp.2d 559 (E.D. Pa. 1998),
(aff'd, 212 F.3d 180 (3d Cir. 2000))...........................................................................7

*Sender v. Bronze Group, Ltd. (In re Hedged-Investments Assocs.)*,
380 F.3d 1292 (10th Cir. Colo. 2004)........................................................................16

*Serv. Indus. v. B.W. Norton Mfg. Co.*, 937 P.2d 551
(Utah Ct. App. 1997)....................................................................................................7

*Smith v. Grand Canyon Expeditions, Co.*, 2003 UT 57,
84 P.3d 1154 (Utah, 2003) ..........................................................................................6

*Steenblik v. Lichfield*, 906 P.2d 872 (Utah 1995) .....................................................11

*In re Tureaud*, 45 BR 658, 12 BCD 723 (BC ND. Okla. 1985)
(affd by 59 BR 973 (ND Okla., 1986))......................................................................16

*Terry v. June* , 420 F.Supp.2d 493, 503 (W.D. Va. 2006).........................................7

*Warfield v. Carnie*, 2007 U.S. Dist. LEXIS 27610
(N.D. Tex. April 13, 2007) ...........................................................................7, 19, 20, 21

STATUTES

     11 U.S.C. § 105(a) .............................................................................................16

     U.C.A. § 25-6-9 ...................................................................................................9

     U.C.A. § 25-6-10(1)......................................................................................17, 19

     U.C.A. § 61-1-22 .............................................................................................5, 11

     U.C.A. § 78-27-40(1) (2002) ..............................................................................8

     U.C.A. § 78B-5-817..........................................................................................9, 10

     U.C.A. § 78B-5-820..........................................................................................9, 10

RULES

     Utah R. Civ. P. 9(b) ...........................................................................................6

Fed. R. Civ. P. 9(b) ............................................................................................11

## <u>SUMMARY OF REPLY ARGUMENT</u>

The Plaintiff/Appellee, hereinafter referred to as "Receiver", states at numerous locations throughout his brief that the "District Court is granted wide discretion when fashioning relief in an equity receivership." Brief of Appellee at pp. vi, 2, & 5 (citations omitted). However, nothing in this "broad discretion" permits a district court to entirely disregard the law.

Regardless of the powers of a district court in appointing and fashioning relief for an equity receivership, the Court must still ensure that the Receiver adheres to legal procedures, relevant statutes of limitations, and other statutes. The Receiver argues that "…in fashioning relief in an equity receivership, a district court has discretion to summarily reject formalistic arguments that would otherwise be available in a traditional lawsuit." Brief of Appellee at p. 2 (citations omitted). This argument incorrectly exaggerates the holding of the case cited and ignores the fact that the Receiver must still follow pleading requirements and must also follow the statutes of limitations relevant to his claims.

Here, the Receiver elected to bring only fraudulent conveyance actions against the various separately named and identified Defendants. The Receiver's own expert provided evidence that two of the defendants were net winners and the rest were net losers. The Receiver failed to plead any theory upon which joint and several liability may be awarded.   He failed to plead alter ego or any other statutory

1

basis for such joint and several liability. In spite of this failed pleading and in contravention to Utah law and federal procedure, the district court awarded joint and several liability. There is no legal justification for awarding joint and several liability in this case. Without any pleading by the Receiver of alter ego, the Defendants were not put on notice of the need to defend such a claim. The Receiver also failed to introduce admissible evidence about the Defendants that would warrant an award on such an alter ego claim, and therefore the district court erred in awarding joint and several liability.

The district court also erred in its application of the commencement of the relevant statute of limitations. In this case, there was an appointment of a trustee who had authority to pursue the same claims asserted by the Receiver in this action. Because of this, the adverse domination theory cannot apply. In addition, the case the Receiver relies on for his argument regarding the beginning of the statute of limitations does not apply. That case dealt with the appointment of the same receiver over two different entities/ponzi schemes. Here, there was a bankruptcy trustee appointed in the same alleged ponzi scheme because of specific allegations of fraud and ponzi in the bankruptcy court. Then nearly one year later, the Receiver was appointed to marshal the assets of this purported ponzi scheme.

Lastly, the Receiver attempts to argue that even though his expert only opined regarding the state of VesCor after the year 2000, that the court can conclude that

VesCor was a ponzi before that year as a matter of law. This is simply not the case. All reasonable inferences support the position that prior to 2000, VesCor operated as an indebted development company. There is therefore a genuine issue of material fact as to whether VesCor was a ponzi before 2000 and when it actually became a ponzi scheme.

## **REPLY ARGUMENT**

I.    <u>Alter Ego is the only theory upon which the District Court can grant joint and several liability and alter ego must be plead; where alter ego was never plead by the Receiver, the District Court erred in awarding joint and several liability.</u>

The Receiver argues that Defendants "incorrectly conflate alter ego with joint and several liability, apparently arguing the District Court erred by imposing joint and several liability without making a finding of alter ego." Brief of Appellee at p. 7. Defendants did not "conflate" these two theories of recovery. Instead, Defendants focused on alter ego in their earlier briefing because alter ego is the only theory that could allow the District Court to award joint and several liability against Defendants. Under the circumstances of this case, the district court cannot find joint and several liability until it has first found alter ego. Because the Receiver did not allege or plead alter ego, the district court may not make such a finding.

The Receiver argues that the Court has the authority to award joint and several liability as a remedy even where alter ego was not plead. This position is incorrect.

3

The district court must have a legal basis for awarding joint and several liability. In this case, there is no legal basis that would justify an award of joint and several liability. The Receiver made no claim for joint and several liability in his Complaint. Where such a claim has not been plead, the district court has no other legal basis for awarding joint and several liability.

There have been four legal theories under Utah Law under which a court could have awarded joint and several liability, three of which are still good law. Those four legal theories are: (a) in contract where the parties agree to such a term; (b) where alter ego has been plead and proven; (c) under explicit statutory authority; and, (d) formerly, under tort theory. The Utah legislature did away with joint and several liability in the context of torts in 1986. In this case, there is no contract in which the parties agreed to joint and several liability, and there is no applicable explicit statutory authority that would allow the district court to award joint and several liability in this case. As such, the district court could only award joint and several liability in this case if it relies on a theory of alter ego.

Defendants did not "conflate" the concept of joint and several liability and alter ego in their earlier briefing. Defendants focused on the legal theory of alter ego because it is a predicate to a joint and several judgment against all Defendants. Defendants have shown this Court that the Receiver failed to plead alter ego and failed to introduce any admissible evidence upon which the district court could rely

4

for a finding of alter ego. Because there was no finding of alter ego, there can be no finding of joint and several liability against the Defendants.

    a. <u>Under Utah law, there are currently three legal theories upon which a court may award judgment jointly and severally against multiple defendants and only the legal theory of alter ego could apply to the facts and circumstances of this case.</u>

There were previously four legal theories under Utah Law under which a court could have awarded joint and several liability, only three of which are still good law.

The first legal theory upon which joint and several liability may be awarded is under contract where the parties have agreed upon joint and several liability. *Federal Deposit Ins. Corp. v. Bismarck Inv. Corp.*, 547 P.2d 212, 214 (Utah 1976) (stating "[w]hether a contract is joint, joint and several, or several, depends upon the construction of the language used and the intention of the parties as manifested by the language [of the contract] used"). The Receiver has not alleged that there are any contractual agreements that would give rise to joint and several liability. As such, this legal theory for joint and several liability cannot apply to this case.

The second legal theory upon which joint and several liability may be awarded is where a statute explicitly gives courts this option. An example of this is within the context of the Utah Securities Act. *See* U.C.A. § 61-1-22 (providing for joint and several liability in the context of fraudulent securities sales). Where there is

such explicit statutory language affording this right of joint and several recovery, such claims must be plead with particularity under the applicable statutes. *See Coroles v. Sabey*, 2003 UT App 339, P28 (Utah Ct. App. 2003) (upholding a dismissal of a securities fraud complaint that lacked the requisite particularity under Utah R. Civ. P. 9(b)) (citing *Arena Land & Inv. Co. v. Petty*, 906 F. Supp. 1470, 1476 (D. Utah 1994) (which states that "[i]n a federal securities fraud case, rule 9(b) requires that individual plaintiffs should identify particular defendants with whom they dealt directly.") (citations omitted). This theory still applies in Utah security actions but is inapplicable here. The Receiver not only failed to plead any such claims in his Complaint, but Utah Statute affords him no legal standing to allege any such claims.

The third legal theory upon which joint and several liability may be awarded is upon a specific finding of alter ego after the claim has been properly plead. To prevail on a claim of alter ego, a plaintiff must claim and then show "…such a unity of interest and ownership [between Defendants] that the separate personalities of the corporation and the individuals no longer exist … and the observance of the corporate form would sanction a fraud, promote, injustice, or an inequitable result would follow." *Smith v. Grand Canyon Expeditions, Co.*, 2003 UT 57, P35, 84 P.3d 1154 (Utah, 2003). As stated in Defendants' Appellate Brief, the Receiver never plead any claims for alter ego. As shown more fully below, alter ego is the only

theory that the district court could use to award a judgment jointly and severally in this case.   The Receiver never plead alter ego and failed to introduce any admissible evidence that would substantiate such a claim.

        b.  <u>Joint and several liability arising out of tort claims was abolished in Utah in 1986.</u>

Courts used to be able to award joint and several liability against multiple defendants in the context of tort claims. It is in this context that courts could award joint and several liability against multiple defendants regardless of whether such a request was plead in the complaint. However, "[i]n 1986, the Utah Legislature passed the Liability Reform Act, which abolished joint and several liability by providing that 'no defendant is liable to any person seeking recovery for any amount in excess of the proportion of fault attributed to that defendant." *Nat'l Serv. Indus. v. B.W. Norton Mfg. Co.*, 937 P.2d 551, 554-555 (Utah Ct. App. 1997) (citations omitted). Now, according to Utah law, courts no longer have authority to award joint and several liability unless there is a contract or statute giving that authority, or a specific claim and finding of alter ego.

"The Receiver's fraudulent transfer claims sound in tort." *Warfield v. Carnie*, 2007 U.S. Dist. LEXIS 27610, *4 (N.D. Tex. April 13, 2007) (citing *Terry v. June* , 420 F.Supp.2d 493, 503 (W.D. Va. 2006) and *SEC v. Infinity Group*, 27 F.Supp.2d 559, 564 (E.D. Pa. 1998), aff'd , 212 F.3d 180 (3d Cir. 2000)). Utah did away with

joint and several liability for the Receiver's claims in 1986 with the Utah Liability Reform Act.

"Prior to passage of the [Utah Liability Reform Act or] ULRA, and under the common law doctrine of joint and several liability, 'a tort-feasor was potentially liable for the entire amount of a plaintiff's damages, irrespective of what proportion of fault was actually attributable to that individual tortfeasor as opposed to another joint tortfeasor." *Sanns v. Butterfield Ford*, 2004 UT App 203, P13-P14 (Utah Ct. App. 2004) (citations omitted). "In 1986, the Utah Legislature enacted the ULRA, eliminating joint and several liability." *See Id.* (emphasis added). "Specifically, the Act states, 'the maximum amount for which a defendant may be liable to any person seeking recovery is that percentage or proportion of the damages equivalent to the percentage or proportion of fault attributed to that defendant.'" *Id.* (citing Utah Code Ann. § 78-27-40(1) (2002)).

"One primary driving force behind the Liability Reform Act was 'basic fairness.'" *Nat'l Serv. Indus. v. B.W. Norton Mfg. Co.*, 937 P.2d 551, 554-555 (Utah Ct. App. 1997) (citations omitted). "As noted by one Utah senator during the debate on the bill, 'The defendant ought to be on the hook only for its own percentage of damages, but ought not be the guarantor for everyone else's damages.'" *Id.* "Clearly, [the Liability Reform Act] mandate[s] that a trial court cannot apportion more fault to a defendant than that amount of fault attributable to that defendant...." *Farmers*

8

*Ins. Exch. v. Parker*, 936 P.2d 1088, 1091 (Utah Ct. App. 1997).

U.C.A. § 78B-5-820(1) states that "the maximum amount for which a defendant may be liable to any person seeking recovery is that percentage or proportion of the damages equivalent to the percentage or proportion of fault attributed to that defendant." U.C.A. § 78B-5-817(1) defines "defendant" as used in the Liability Reform Act as "…a person, other than a person immune from suit as defined in Subsection (3), who is claimed to be liable because of fault to any person seeking recovery." U.C.A. § 78B-5-817(2) defines "fault" in this context as "… <u>any actionable breach of legal duty</u>, act, or omission proximately causing or contributing to injury or damages sustained by a person seeking recovery, including negligence in all its degrees, comparative negligence, assumption of risk, strict liability, breach of express or implied warranty of a product, products liability, and misuse, modification, or abuse of a product." (emphasis added). Not only does the Receiver's claim sound in tort and is therefore subject to the Utah Liability Reform Act, but the Act's specific language is intended to limit Defendants' exposure to liability in a case just like this.

The Receiver has alleged that Defendants received fraudulent transfers and did not take those transfers "in good faith". Receiver Complaint at ¶ 33. Indeed, under the Utah Uniform Fraudulent Conveyance Act, a defense to fraudulent conveyance is receiving the transfers "in good faith". U.C.A. § 25-6-9. The

9

Receiver's entire complaint is based on the allegation that Defendants breached their legal duty to creditors (or the Receiver) of VesCor by not taking the transfers "in good faith". As such, this "fault" or "breach of legal duty" by the Defendants is exactly that kind of fault or breach that the Utah Legislature intended would be limited by the Liability Reform Act. *See* U.C.A. § 78B-5-820 & -817. Because of this, the District Court did err in awarding joint and several liability against Defendants.

      c.  <u>The Receiver's arguments that the district court can award joint and several liability in this case without any claim by the receiver for such an award is flawed.</u>

The Receiver attempts to argue that a court can award joint and several liability under a claim for fraudulent conveyance. He states that "Utah courts have not addressed [the] issue" of whether joint and several liability applies to the Utah Uniform Fraudulent Transfer Act. Receiver's Brief at p. 6. However, as noted above, the Utah state legislature has addressed this issue within the construct of the Utah Liability Reform Act. U.C.A. § 78B-5-817 *et seq.* This act precludes such an award in the context of torts and therefore in the context of claims for fraudulent conveyance.

In spite of this explicit act by the Utah Legislature, the Receiver argues that "[j]oint and several liability is also appropriate in Utah securities fraud cases." Brief of Appellee at p. 6. This case is not a Utah securities fraud case. The Receiver cites

10

to *Harper v. Tri-State Motors, Inc.*, 90 Utah 212, 58 P.2d 18 (1936) to support his claim that the District Court did not err in awarding joint and several liability. That 1936 case construed the forerunner of the Utah Uniform Securities Act, which act expressly limits liability of defendants. *See Steenblik v. Lichfield*, 906 P.2d 872, 879-880 (Utah 1995) (citing U.C.A. § 61-1-22 which addresses liability of persons in control, partners, or sales persons). However, the Utah Uniform Securities Act and the common law existing prior to its passage are both inapplicable here. That act only creates liability to persons who purchased securities and not receivers pursuing fraudulent conveyance. U.C.A. § 61-1-22(1)(b).

Additionally, the Receiver never alleged any claims for securities fraud in his Complaint. Any such securities fraud claims must be plead with particularity. Fed. R. Civ. P. 9(b). Nowhere in the Receiver's complaint is there any allegation of securities fraud. Since joint and several liability is available only in securities fraud cases, that application fails here because such claims were neither raised in the Receiver's complaint, nor was any evidence presented that Defendants had committed securities fraud.

The Receiver also cites to *In re Blatstein*, 260 B.R. 698 (E.D.Pa. March 19, 2001) to support his argument that a court can award joint and several liability in fraudulent transfer actions. That case applies the Pennsylvania Uniform Fraudulent Conveyance Act but specifically deals with transfers between spouses. That court

found persuasive the argument that fraudulent conveyance is a tort and chose to impose joint and several liability because the spouses in that case were considered "joint tortfeasors". *Id.* at p. 720. Each of the spouses participated in each of the alleged fraudulent transfers. *Id.* at p. 719.

The court in *Blatstein* then carried this "joint tortfeasor" concept on in highlighting the appropriateness of joint and several liability where "two or more individuals or entities collaborate or have close relationships in engaging in the illegal conduct." *Id.* (citations omitted). It then concluded that the recipient spouse was also at fault or liable to the Trustee. *Id.* at p. 721.

*Blatstein* actually supports Defendants' position that the District Court erred in awarding joint and several liability. Here, the Receiver's expert found the exact amounts each of the Defendants transferred to VesCor and the exact amounts each of the Defendants received from VesCor. In doing so, the Receiver's expert actually concluded that two of the defendants were net winners and the rest were net losers. Under the Utah Liability Reform Act, each party is liable for his or her own conduct. In *Blatstein*, the court found that each spouse was equally liable because each participated in the fraudulent conveyances. In *Blatstein*, the court held that each of the parties was at "fault" to the creditor for all transfers. Here, not all defendants participated in each of the transfers of the other defendants and therefore each defendant cannot be liable for the acts or transfers of the other defendants. Where

12

not all of the Defendants are at "fault", as contemplated by the Utah Liability Reform Act, to the Receiver, each of the Defendants can only be liable for its respective fault.

       d. <u>The district court erred in awarding joint and several liability because it did not have authority to grant such a judgment, the Receiver had never claimed joint and several liability, and the Receiver failed to prove the elements necessary for such an award.</u>

The Utah Liability Reform Act eliminated all aspects of joint and several liability except those expressly agreed to in contract, those times where corporate and legal identities should be disregarded, or where others statutes allow it. *See Sanns v. Butterfield Ford*, 2004 UT App 203, P21 (Utah Ct. App. 2004) (stating that the ULRA eliminated all kinds of joint and several liability). There is no contract at issue here giving rise to joint and several liability. Under any tort theory, the Utah Legislature has abolished joint and several liability. There is no other statute that would impose joint and several liability on Defendants. Therefore, the only possible theory of joint and several liability that remains available to the Receiver is joint and several liability based on an award of alter ego.

As pointed out in Defendants initial Brief, alter ego cannot be considered where it has not been plead. *See McDonald v. Beko Assocs., Inc.*, 2008 U.S. Dist. LEXIS 56891, 10-11 (D. Utah July 28, 2008) (granting a motion to dismiss because the claim for alter ego failed to state a claim upon which relief may be granted). *See*

*Also Ponderosa Dev. Corp. v. Bjordahl*, 787 F.2d 533, 536 (10th Cir. Wyo. 1986) (stating that the district court had concluded that the alter ego cause of action constituted a compulsory counterclaim, but overturning the decision based on the lack of collateral estoppel); *See Also BC Tech., Inc. v. Ensil Int'l Corp.*, 2007 U.S. Dist. LEXIS 74126 (D. Utah Oct. 3, 2007) (where the Court refused to rule on an argument for alter ego where that claim was not included in the most recently filed and accepted complaint).

It is undisputed that the Receiver never plead any claim for alter ego against Defendants.

In addition to failing to plead the claim for alter ego, the claim of alter ego has two requirements that must be proven by a plaintiff before it can be awarded. "First, 'there must be such a unity of interest and ownership that the separate personalities of the corporation(s) . . . no longer exist.'" *Prows v. State*, 822 P.2d 764, 767 (Utah 1991) (citations omitted). "Second, the court's observance of the corporate form must 'sanction a fraud, promote injustice, or [cause] an inequitable result . . . .'" *Id.* Not only were these elements never proven, but the Receiver never presented any admissible evidence to prove these two elements/requirements. As such, the Receiver has not satisfied his burden of proof on a claim of alter ego.

Because there is no legal theory allowing joint and several liability, because the Receiver never plead such a claim, and because there was no admissible proof to

support the required elements of such a claim, the district court erred in awarding

joint and several liability and this case should be remanded.

    II.    <u>The District Court erred because it did not start the one year reasonable discovery rule under the Statute of Limitations for fraudulent transfer when the bad actor in VesCor was removed by the appointment of the bankruptcy trustee.</u>

The Receiver argues that Defendants "…incorrectly focus on the hypothetical

knowledge of a third-party, rather than the knowledge of the claimant, the

Receiver." Brief of Appellee at p. 12. This statement ignores the actual knowledge

and actual notice of the Bankruptcy Trustee appointed for VesCor Capital, Inc. by

the bankruptcy court due to pleadings that state that VesCor was a ponzi scheme and

that it was a fraud. However, more importantly, it also ignores the fact that the

bankruptcy trustee had authority to pursue these claims.

The Receiver correctly points out that this is a case of first impression. There

are no other cases where a purported ponzi was under the control of a bankruptcy

trustee and then placed under the control of a federal receiver. Usually, in the context

of an alleged ponzi scheme, the scheme is either administered by a bankruptcy

trustee or a federal receiver, not both. Here, the "bad actor" was removed when the

bankruptcy trustee was appointed. It is therefore the date of the removal of the bad

actor by the appointment of the bankruptcy trustee that should be used as the

beginning date for the calculation of the relevant statute of limitations.

15

The Receiver tries to argue that the bankruptcy trustee was appointed for only one of the 150 VesCor entities. First, there was a bankruptcy trustee appointed for one of these entities and there was another trustee appointed in Nevada for other VesCor entities. Second, as pointed out in Defendants' initial brief, a bankruptcy court and trustee have broad authority to consoloditate non-debtor affiliates into the same bankruptcy. This process has been followed in the 10th Circuit. *See Sender v. Bronze Group, Ltd. (In re Hedged-Investments Assocs.)*, 380 F.3d 1292, 1295 (10th Cir. Colo. 2004) (discussing the bankruptcy trustee's pursuit of fraudulent transfers in a ponzi scheme involving one company and sub-partnerships). *See Also In re Tureaud*, 45 BR 658, 12 BCD 723 (BC ND. Okla. 1985) (affd by 59 BR 973 (ND Okla., 1986)) (citing 11 U.S.C. § 105(a) where "assets and liabilities of different entities are dealt with as if the assets were held by, and the liabilities were incurred by a single entity a court may consolidate non-debtor affiliates.").

It is therefore not just the hypothetical possibility that the Receiver's claims could have been discovered earlier than the actual appointment of the Receiver. The bankruptcy trustee had actual knowledge of the Receiver's claims because the motion and order for his appointment actually alleged that VesCor was a ponzi scheme and the bankruptcy court acknowledged VesCor's fraud. The removal of the bad actor from VesCor by the trustee's appointment triggered the beginning of the discovery rule, because the Trustee could have pursued these claims. It is the

16

Banktuptcy Trustee's appointment that should trigger the beginning of the one year

discovery rule. The discovery rule allows the claims to survive for one year after the

transfer or obligation **was** or **could reasonably have been** discovered by the

claimant…". U.C.A. § 25-6-10(1) (emphasis added).

  The Receiver attempts to use *Broadbent v. Advantage Software, Inc.* to

support his argument that the district court can ignore the appointment of the

bankruptcy trustee as the date to begin the one year discovery rule under the relevant

statute of limitations. 415 Fed.Appx. 73 (10th Cir. 2011). The Receiver states that

this case stands for the proposition that a "…district court is authorized and expected

to determine claims in an equity receivership based on equitable, rather than

formulistic, principles." *Id.* at 79. This broad statement muddies two very different

factual cases and argues that a federal receiver is above the law.

  *Advantage Software* arose out of a ponzi scheme, but the position of

Defendants in this case is far different from the parties in the *Advantage Software*

case. In that case, the receiver did not bring a fraudulent transfer action. *Id.* at p. 77.

There, the defendant had, as part of an effort to do asset protection planning,

transferred rights to certain software to the purported ponzi scheme and had entered

into a license agreement with the purported ponzi company to use the software. *Id.* at

p. 75. As part of the arrangement, the defendant was to pay royalties under the

license agreement to that purported ponzi company. *Id.* When the Receiver brought

suit, he alleged ownership of that certain software and contract claims under the license agreement for back royalties. *Id.* at p. 77. The defendant raised contract counterclaims and attempted to argue that the license agreement was unenforceable under a number of contract theories and claimed that the Receiver could not bring the contract claims due to the statute of limitations. *Id.* at pp. 76-77.

The court in *Advantage Software* rejected the statute of limitations and contract law arguments that defendants raised "…in favor of treating appellants like all other similarly situated claimants." *Id.* at 79. Instead of allowing it to proceed as a traditional contract case, that court acknowledged the alleged fraud and elected to treat all defendants or claimants under that ponzi the same. In essence, the court in *Advantage Software* treated the receiver's contract claims as fraudulent conveyance claims, weighing winners and losers, and ignored the receiver's and the defendant's contract theories. *Id.*

Here, Defendants have not raised contract based counterclaims. Instead, the Defendants have asserted that the Receiver himself did not comply with the statutory requirements for asserting his fraudulent conveyance claims. Unlike *Advantage Software*, the Defendants here are not raising counterclaims to traditional contract suits and the court does not need to ignore the contracts and address winners and losers; instead, Defendants here are raising very specific procedural and meritorious defenses based on the explicit terms of the Utah Uniform Fraudulent Conveyance

18

Act and the actions of the Receiver himself. The Receiver is not above the law; he is not above the Utah Legislature's enactment of a clear statute of limitations for the specific claims brought in this action and must therefore still comply with statute. In this case, the court should treat all claimants equally by deciding that the beginning date of the relevant statute of limitations was the date the bad actor was removed.

The Utah Legislature enacted the Utah Uniform Fraudulent Conveyance Act and specifically addressed a statute of limitations for such claims. The Receiver brought claims pursuant to this Utah statute and must adhere to and comply with the explicit statutes governing his claims. The Utah Legislature provided that the statute of limitations was "…within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation **was** or **could reasonably have been** discovered by the claimant…". U.C.A. § 25-6-10(1) (emphasis added.) The claim was discovered by a bankruptcy trustee who had all authority necessary to pursue the claims. As such, the beginning point of the one year discovery rule should be the date upon which the bankruptcy trustee was appointed and not the date the receiver was appointed. A result contrary to this would ignore the explicit language of U.C.A. § 25-6-10 and allow for perpetual restarts to the one year discovery rule. Allowing this result could result in cases begin shifted between receivers and/or trustees to simply restart the discovery clock and extend the discovery rule. This result is not consistent with the intent of the

19

legislature's imposition of a clear statute of limitations.

In addition, the Receiver argues that a case from the Northern District of Texas illustrates a courts rejection of an argument similar to Defendants regarding the statute of limitations. Brief of Appellee at p. 13 (citing *Warfield v. Carnie*, 2007 U.S. Dist. LEXIS 27610 (N.D. Tex. April 13, 2007). However, that case does not involve a similar argument. In that case, the defendants were arguing that the same individual who served as a receiver for one purported ponzi scheme (Dennel) and then served as a receiver for another purported ponzi scheme (RDI) was bound by knowledge he had when he served as receiver of Dennel. *Id.* at pp. 3-4. The defendants argued that "…while [Warfield, the Plaintiff and Receiver, was] serving as the receiver in the Dennel case, [he] knew of the Edwardses' activities; knew that RDI and its affiliated entities operated as Ponzie schemes; knew that the Edqardses were operating PILP, the largest investor in the Dennel program; and knew that the Carnies were two of approximately one hundred individual investors who had invested in PILP." *Id.* at pp. 13-14.

That court in *Warfield* discussed the adverse domination theory at length and ultimately rejected the argument of the defendants in that case. This theory and that court's analysis illustrates the key issue in that case. The receiver of Dennel had no authority to bring the fraudulent conveyance claims of RDI. Thus, until the bad actors were removed from RDI and the receiver was appointed for that entity, the

statute of limitations could not begin to run. This set of facts is markedly different from those in VesCor. A banktruptcy trustee was appointed due to fraud and allegations that VesCor was a ponzi scheme. The appointment of that trustee removed the bad actor and the trustee, immediately upon appointment, held the authority to pursue VesCor's fraudulent conveyance claims. He did not pursue those claims. Instead, nearly one year after a court appointed a bankruptcy trustee, who could have pursued the claims of VesCor, a different court appointed the Receiver. The Receiver wants the new appointment to count as a reset button on the statute of limitations.

Unlike *Warfield*, the adverse domination theory cannot further toll the statute of limitations in this case because of the trustee's appointment. Unlike *Warfield*, the facts are not hypothetical allegations, but are actual pleadings before a bankruptcy court alleging a ponzi scheme and court findings of fraud. The Bankruptcy Trustee was appointed to remove the bad actor in an alleged ponzi scheme. Unlike *Warfield*, the bad actor was removed and the bankruptcy trustee for VesCor actually had the authority to pursue these actual claims but did not. Unlike *Warfield*, the Receiver in this case replaced a bankruptcy trustee, not the bad actor. For these reasons, the district court erred in not beginning the one year discovery rule under the relevant statute of limitations when the bankruptcy trustee was appointed.

///

III.    <u>All reasonable inferences show that VesCor was not a ponzi scheme</u>
        <u>before 2000</u>.

The Receiver argues that if VesCor was ever a ponzi, it must necessarily

always be a ponzi. Brief of Appellee at p. 14. This argument ignores the legal

standard that in reviewing a motion for summary judgment, a court should view the

"…factual record and reasonable inferences therefrom should be viewed in the light

most favorable to the party opposing summary judgment." *Gray* v. *Phillips*

*Petroleum Co.,* 858 F.2d 610, 613 (10th Cir.1988).

The Receiver acknowledges that his expert opined that VesCor was only a

ponzi after the year 2000. The Receiver's expert presented no other opinions about

VesCor, which operated since as early as 1991. The Receiver does argue that

because VesCor lost money beginning in 1991, that it showed possibility of being a

ponzi scheme during this pre-2000 time. However, Defendants' expert opined that

often development companies like VesCor continually lose money until the

development concludes and the company is able to its sell product. (Appx. at 475).

In this case, VesCor was a development company with real estate holdings valued in

excess of one hundred eighty million dollars. Receiver's Brief at p. x. Because

Defendants presented expert testimony that it is common for development

companies to lose money while conducting development work, the reasonable

inference is that even if VesCor was losing money, it was still a viable development

company developing real property in anticipation of reaping a profit in the future.

Since VesCor had nearly $200 million in assets, it is reasonable that it did operate as a viable development company at some time. The Receiver did not introduce any expert opinion about VesCor for the time period 1991- 2000, the reasonable inference is that VesCor may not have always been a ponzi scheme. For these reasons, without any expert opinion that VesCor was a ponzi scheme prior to the year 2000, a reasonable inference is that VesCor operated as a development company and only later morphed into a ponzi scheme. Because of this reasonable inference and the absence of expert opinion regarding VesCor pre-2000, the Receiver should not be entitled to the ponzi presumption during the time period of 1991-2000. Because of this reasonable inference, the district court erred in applying the ponzi presumption to all periods including to investments made by Defendants before 2000.

## CONCLUSION

Based on the foregoing, Defendants respectfully request that this Court reverse the Order of the United States District Court, District of Utah and remand the case for further proceedings with instruction to apply the appropriate statute of limitations, disallow the never made claims of alter ego, and to not award summary judgment because there are genuine issues of material fact.

## <u>REQUEST FOR ORAL ARGUMENT</u>

Defendants have previously requested oral argument. With the number of

issues involved, oral argument would assist this appeal by providing guidance

through the facts of this case and the legal arguments posited.

Respectfully Submitted,


/s Clifford V. Dunn
Clifford V. Dunn, #933
Adam C. Dunn, #10926
DUNN LAW FIRM
***Attorneys for Defendants - Appellants***
110 West Tabernacle
P.O. Box 2318
St. George, UT   84770
Telephone Number: (435) 628-5405
Fax:   (435) 628-4145
Email:   cvdunn@dunnfirm.com


## <u>CERTIFICATE OF VIRUS PROTECTION</u>

I certify that the digital version of the foregoing is an exact copy of what has

been submitted to the Court in written form and e-mailed to counsel of record.

There are no privacy redactions to be made. The digital submission has been

scanned with the most recent version of Trend Micro, which daily scans for updates,

and according to the software program is virus free.

By:  _/s Clifford V. Dunn
Clifford V. Dunn
24

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION</u>

As required by Fed. R. Appx. P. 32(a)(7)(C), it is hereby certified that this Brief of the Appellant is both proportionately spaced and contains 5,791 words.

  <u>X</u>   I relied on my word processor to obtain the count and it is Microsoft Word 2010.

  <u>    </u>   I counted five characters per word, counting all characters, including citations and numerals.

I certify that the information on this form is true and correct to the best of my knowledge and belief formed after a reasonable inquiry.

By:  <u>/s Clifford V. Dunn</u>
Clifford V. Dunn

25

## <u>CERTIFICATE OF SERVICE</u>

It is hereby certified that a true and correct copy of the foregoing Brief of

Appellant was duly served by ECF and by Federal Express or US Mail on

November 30, 2012, as follows:

> Jared N. Parrish
> Sally B. McMinimee
> Prince, Yeates & Geldzahler
> City Centre I, Suite 900
> 175 East 400 South
> Salt Lake City, UT 84111 801-524-1000

It is further certified that:

(1)    all required privacy redactions have been made;

(2)    this ECF submission is an exact copy of the hard copy of the <u>Reply</u>

Brief that will be submitted; and

(3)    this ECF submission was scanned for viruses with the most recent

version of a commercial virus scanning program (Trend Micro) and, according to the

brief and addendum are free of any known viruses.

DUNN LAW FIRM

By:  /s Clifford V. Dunn
          Clifford V. Dunn